(99 App. Div. 623)
BELL v. POLYMERO et al.

(Supreme Court, Appellate Division, First Department. December 9, 1904.)

1. VENUE—INADVERTENCE—COMPLAINT—AMENDMENT.
   Where both parties recognize and act on the assumption that the county named in the summons is the place of trial, the fact that the complaint names a different county as the place of trial merely through inadvertence does not render an amendment of the complaint necessary.

Appeal from Special Term, New York County.

Action by Sidney Bell against Demetrius Polymero and another. From an order denying a motion to reargue a motion, plaintiff appeals. Affirmed in part.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Louis H. Levin, for appellant.

Albert W. Ransom, for respondents.

McLAUGHLIN, J. The plaintiff appeals from an order denying a motion to reargue a motion to compel plaintiff's attorneys to accept a notice of trial of the action for New York county, and fixing that county as the place of trial, and amending the complaint by striking therefrom the words "New York county," and inserting in place thereof "Orange county." The facts involved are set out in the opinion delivered in Bell v. Polymero and Another (decided herewith), 90 N. Y. Supp. 920, and it is unnecessary to repeat them. From these facts it appears that, by reason of the inadvertence of plaintiff's attorneys, New York county was named in the complaint, instead of Orange county, but that both parties recognized it was a mistake, and was not intended to change the place of trial, because all of the proceedings were subsequently·taken in Orange county, or in the Second Judicial District, and therefore the place of trial was not changed. This being so, we think there was no necessity for amending the complaint, and a sufficient reason was not shown for a reargument of the preceding motion.

The appeal from the order denying the motion to reargue is dismissed, and the order, so far as it denied the motion to correct the complaint, is affirmed, with $10 costs and disbursements. All concur.

(99 App. Div. 298)
In re CLINCH.

(Supreme Court, Appellate Division, First Department. December 9, 1904.)

1. TAXATION—TRANSFER TAX—PROPERTY TAXABLE.
   Stocks in New York corporations, bonds, etc., physically present in the state of New York, although held by a nonresident at the time of his death, are taxable under the transfer tax law (Laws 1896, p. 795, c. 908).

2. SAME.
   Under Transfer Tax Law (Laws 1896, p. 868, c. 908, as amended by Laws 1897, p. 150, c. 284) § 220, subd. 4, providing that the transfer shall be taxable when any person becomes beneficially entitled, in possession or expectancy, to any property,°or the income thereof, property which pass-

es under a father's will to his son, who dies before a settlement of the father's estate, which property is afterwards delivered to the son's executors, is, when so delivered, subject to a transfer tax.

Appeal from Surrogate's Court, New York County.

In the matter of the appraisal under the transfer tax act of the property of Robert T. Clinch, deceased. From an order fixing a transfer tax on certain personal property of the deceased (89 N. Y. Supp. 802), Cornelia Stewart Marillon, as substituted trustee under the will of said deceased, appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Howard T. Kingsbury, for appellant.

J. A. Kellogg, for respondent.

McLAUGHLIN, J. This is a transfer tax proceeding, and the facts, so far as material, are as follows: On the 12th day of April, 1899, Robert T. Clinch died at Paris, France, being then a resident of that city. He left a last will and testament, which on the 23d of February, 1900, was admitted to probate by the Surrogate's Court of the county of New York, and letters testamentary, on the 30th of April following, issued to the executor therein named. All the property which he owned or in which he had any interest in the state of New York at the time of his death was such as came to him under the will of his father, Charles J. Clinch, who died on the 22d of July, 1898, at Paris; he also at the time of his death being a resident of that city. The father's will was admitted to probate in the Surrogate's Court of the county of New York, and letters testamentary issued to the executors named therein on the 6th of September, 1898. At the time of the death of Robert, his father's executors had not accounted for or made any distribution of his estate, and the time allowed by statute for this purpose had not then expired. On the 14th of June, 1899, they did, however, make such distribution, and there was then set apart for the estate of Robert, and delivered to his executors, certain personal property, consisting of stocks in New York corporations, bonds, etc., all of which were physically present in the state of New York; and it is upon the transfer of this property that a tax has been imposed, the validity of which is challenged by the substituted trustee under the will of Robert.

The appellant does not claim but that a transfer of property of the class or kind here transferred is taxable under the statute, even though held by a nonresident at the time of his death, and such claim could not well be made, in view of the decisions bearing on that subject. Matter of Bronson's Estate, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238, 55 Am. St. Rep. 632; Matter of Whiting's Estate, 150 N. Y. 27, 44 N. E. 715, 34 L. R. A. 232, 55 Am. St. Rep. 640; Matter of Morgan's Estate, 150 N. Y. 35, 44 N. E. 1126; Matter of Houdayer's Estate, 150 N. Y. 37, 44 N. E. 718, 34 L. R. A. 235, 55 Am. St. Rep. 642. What is claimed is this: That inasmuch as the interest which Robert had in his father's estate had not been definitely determined, and the property reduced to posses-

sion, prior to Robert's death, a transfer thereof by his will is not liable to a tax under the statute. In support of this claim our attention is called to Matter of Phipps, 77 Hun, 325, 28 N. Y. Supp. 330, affirmed 143 N. Y. 641, 37 N. E. 823; matter of Chabot's Estate, 44 App. Div. 340, 60 N. Y. Supp. 927, affirmed sub nom.; Matter of Zefita's Estate, 167 N. Y. 280, 60 N. E. 598. An examination of these authorities, however, does not, as it seems to us, sustain the appellant's contention. In the Matter of Phipps, supra, the facts are not analogous to those here involved. There one Elizabeth Fogg, a resident of the state of New York, made a will in which she gave her residuary estate, consisting of real and personal property, to Hiram Fogg, of Bangor, Me., and John A. Phipps, of Boston, Mass. Phipps died in Boston, before the estate of Elizabeth Fogg had been administered, leaving a will in which his interest in the estate passed to his wife. The question presented was whether the interest so transferred in the state of Massachusetts was taxable in the state of New York. The court held it was not, for the reason that such interest, at the time a tax was attempted to be imposed, had not been ascertained by an accounting of the executors, and until that had been done the legatee might not be able to maintain an action for its recovery. Van Brunt, P. J., delivering the opinion, referring to the rights of the residuary legatée prior to the executor's accounting, said:

"He had the right to claim the amount of money which his share of the residuary estate of Mrs. Fogg would result in—nothing more; no particular piece of property, no particular sum of money, no particular representatives of money. or property. And until this residuary estate was ascertained by an accounting of the executors, the legatee might not be even able to maintain an acion for its recovery. It would appear, therefore, that a tax in this proceeding has been levied upon a legacy which not only had never been realized, but the right to the possession of which had never accrued."

The Zefita Case does not aid the appellant. There Mrs. Hayward, a resident of Paris, bequeathed certain personal property in New York to her daughter, the Countess Zefita. The day the will of Mrs. Hayward was probated, the countess died. When the consideration of the transfer tax came before the Appellate Division, it declined to pass upon the question as to whether the property would be taxable when the mother's estate had been administered, and the right to the property bequeathed had been determined. Mr. Justice Rumsey, delivering the opinion of the court, said:

"The question presented is not whether this property is subject to transfer tax in the hands of the executor of Mrs. Hayward, but whether the right of the Countess Zefita to have it paid over to her by the executor of Mrs. Hayward, after it should have been administered upon, was such property as authorized the surrogate to levy a transfer tax upon it before it could be paid to the legatee of the Countess Zefita. It must not be forgotten that no question arises here as to the liability of this property for taxation before it can be paid to the legatee of Mrs. Hayward. It is still in the hands of Mrs. Hayward's executors, and her estate has not yet been administered upon; and no question is presented here as to whether it may be liable for taxation before Mrs. Hayward's executor can transfer it to the executor of the Countess Zefita, but the single question is whether this property, which is in the hands of the executor of Mrs. Hayward, and is not yet administered upon, and has not been

paid over to the Countess Zefita, is now to be subject to a transfer tax against the legatee of the Countess Zefita. The question must be decided as of the time when the appraisal was made. We are not called upon to determine whether this property, after it shall have been paid over by the executor of Mrs. Hayward to the executor of the Countess Zefita, must pay a transfer tax in his hands before it can be delivered to Miss McLane, the legatee of the Countess Zefita. No such question is presented."

The decision of the Appellate Division was affirmed by the Court of Appeals, and the opinion of Judge Bartlett, which was concurred in by all of the judges sitting, clearly intimates that, when the estate had been settled, the property distributed would be liable to a tax. He said:

"We are of the opinion that the learned Appellate Division made a proper distribution of the case at bar as to all the interests, in view of the situation existing at the time the tax was imposed. When the executor of Mrs. Hayward, the mother, shall have accounted and ascertained the amount of the residuary estate in his hands, it will be his duty to see that the transfer tax is adjusted and satisfied before paying over the residue to the legal representative of the countess."

Here, before the tax was imposed, the father's estate had actually been settled, and the property which passed under his will to the son had been delivered to the son's executors. This would seem to bring the case directly within the statute making such transfer liable to a tax. The statute provides that "when any such person or corporation becomes beneficially entitled, in possession or expectancy, to any property, or the income therefrom by any such transfer," the transfer shall be taxable. Subdivision 4, § 220, Transfer Tax Law (Laws 1896, p. 868, c. 908, as amended by Laws 1897, p. 150, c. 284). Of course, until there had been a settlement of the father's estate, it could not be definitely known there would be any transfer to tax; and, until a distribution had been made, nothing had been transferred, and for that reason no tax could be imposed. Up to that time there was a mere claim on the part of Robert or his executors against his father's executors for a share or interest in his estate, which passed by his will. Such claim was at most a mere chose in action, which followed the residence of the claimant; and, as indicated, it would be impossible to determine as to what property, if any, would be ultimately transferred by reason of it. But when an actual distribution had taken place, that which theretofore was uncertain became certain, and that moment a tax attached to the transfer. Matter of Huber's Estate, 86 App. Div. 458, 83 N. Y. Supp. 769.

The order of the Surrogate appealed from, imposing a tax upon the transfer of the property in question, must therefore be affirmed, with costs. All concur.