In the Matter of the Transfer Tax upon the Estate of THOMAS H. HUBBARD, Deceased.

JOHN HUBBARD et al., as Executors, Appellants; THE STATE TAX COMMISSION, Respondent.

**Decedent's estate — transfer tax — postponement of valuation of decedent's estate — valuation must be made as of time of decedent's death but the court may in its discretion and for sufficient reasons postpone the valuation.**

1. A transfer tax is imposed upon the estate of the decedent as it exists at the hour of his death and its value is to be fixed as of that time, but the court may, in its discretion, upon sufficient facts postpone the valuation to await the happening of some event which may render the appraisal more easy and certain.

2. By the terms of a partnership agreement between decedent and his partner the surviving partner was given three years within which to liquidate and dispose of the business and make division of the proceeds thereof; also a large part of decedent's estate consisting of securities owned by him individually was pledged to secure loans made by others to a railroad corporation in which he was interested, and such loans being also secured by collateral belonging to the debtor, and not becoming due for a couple of years at the time of his death it was uncertain whether the debtor would discharge its obligations or whether the creditors would be compelled to resort to the individual securities of decedent. Under these circumstances the court may in its discretion postpone the appraisal to be made for fixing the transfer tax upon these two portions of decedent's estate, in the case of the interest in the copartnership until the liquidation shall be completed by the surviving partner, as provided in the copartnership agreement, and in the case of the securities pledged for the loans of the third party until the loans shall become due and it shall be ascertained whether in fact resort will be had to the individual securities of the decedent for the purpose of paying them. The valuation to be then made must be made as of the date of decedent's death and, therefore, the amounts realized by the partner on liquidation may require some modification to adjust them to that date.

*Matter of Hubbard,* 199 App. Div. 356, appeal dismissed.

(Argued October 2, 1922; decided October 24, 1922.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 26, 1922, which reversed an order of the New York County Surrogate's Court assessing a transfer tax upon the estate of Thomas H. Hubbard, deceased, and remitted the matter to the appraisers for reappraisal of certain interests of the decedent.

The following questions were certified: " 1. Should the valuation for purposes of the inheritance tax of the decedent's interest in a copartnership business be suspended until the liquidation by the surviving partner of the copartnership business, where the articles of copartnership provide as follows:

" ' In the event of the death of either party hereto the survivor shall have sole custody of the partnership property for a period of three years after such death, if he shall live so long, with the right to liquidate and dispose of the same and make division thereof. His acts with reference thereto shall be binding upon the heirs, executors, administrators and assigns of the decedent as completely as if he were the absolute legal and equitable owner of said property and shall be accepted as final without question and without any proof other than his own statement. To give effect to such acts and statements this agreement shall operate, upon the death of either party, as a sale and delivery to the survivor of all the partnership property not then withdrawn from the partnership use.'

" 2. Should evidence tending to show appreciation or depreciation in the value of such partnership assets occurring after the death of the testator and prior to the liquidation by the surviving partner, be considered in making such valuation?

" 3. Should the valuation of such partnership assets, as established by the accounting of the surviving partner after their liquidation, be deemed the value of the interest

of the testator's estate in said partnership for the purposes of inheritance tax?

" 4. Should the valuation of the decedent's interest in property pledged by him as security for the indebtedness of a third party, maturing approximately two years after his death, be suspended until the maturity of the indebtedness?

" 5. In determining the value of such pledged securities should evidence be considered of the disposition made of the pledged property at the maturity of the indebtedness?"

*Albert Stickney* for appellants.   The Appellate Division erroneously held that taxation of the interest of the Hubbard estate in the partnership assets should be suspended until the accounting of the surviving partner and should be based upon the amount for which he ultimately accounts, or is held accountable.   This decision is contrary to the Inheritance Tax Law which requires the ascertainment of the value of the estate as of the date of decedent's death as the basis of the assessment and tax wherever practicable.   (*Costello* v. *Costello*, 209 N. Y. 252; *Williams* v. *Whedon*, 109 N. Y. 333.)   It would be contrary to the Inheritance Tax Law as heretofore construed by this court to permit the consideration by the appraiser of evidence tending to show appreciation or depreciation in the market value of the assets occurring after decedent's death.   (*Matter of Davis*, 149 N. Y. 539; *Matter of Sloane*, 154 N. Y. 109; *Matter of Penfold*, 216 N. Y. 163; *Matter of Hazard*, 228 N. Y. 26.)   The decedent's equity in the " additional collateral " pledged as security for the indebtedness of the Pittsburgh and Shawmut Railroad Company was neither impracticable of present valuation nor does it require the application of any different rule of taxation from the appraisal of the equity under an ordinary pledge of securities.   (*Matter of Grosvenor*, 124 App. Div. 331; *Matter of Hallenbeck*,

12

195 App. Div. 381; *Matter of Gale,* 83 Misc. Rep. 686; *Matter of Ubrici,* 111 Misc. Rep. 55; *Matter of Gibert,* 176 App. Div. 850; *Matter of Lowry,* 89 App. Div. 226.)

*John B. Gleason* and *Lafayette B. Gleason* for respondent. Where securities are beyond the possession or control of the executor and their value is problematical or in dispute, it is proper to suspend the taxation and to appraise the items according to their values at the date or dates when they come into the control of the executor, with such an allowance as regards interest or income as to make this value relate to the date of death. (*Matter of Hazard,* 228 N. Y. 26; *Matter of Westurn,* 152 N. Y. 93; *Matter of Phipps,* 77 Hun, 325; 143 N. Y. 641; *Matter of Zefita,* 187 N. Y. 280; *Matter of Clinch,* 99 App. Div. 298; 180 N. Y. 300; *Matter of Penfold,* 87 Misc. Rep. 525; *Matter of Hazard,* 188 App. Div. 869; *Penfold* v. *Comptroller,* 248 U. S. 537.)

HISCOCK, Ch. J. For purposes of discussion we have assumed that this appeal involves the question whether the court under special conditions may order postponement of the appraisal of a decedent's estate for the purpose of fixing a transfer tax.

Thomas H. Hubbard died in 1915 being a member of the firm of Thomas H. Hubbard & Co., composed of himself and one Searles. This copartnership was not engaged in any general business but was formed for the purpose of holding and managing certain properties in which the partners were interested and these to a large extent consisted of stocks and bonds many of which were not listed on the Stock Exchange and of which the values may not have been easily ascertainable. The copartnership agreement contained the following clause: " In the event of the death of either party hereto, the survivor shall have sole custody of the partnership property for a period of three years after such death, if he shall live

so long; with the right to liquidate and dispose of the same and make division thereof. His acts with reference thereto shall be binding upon the heirs, executors, administrators and assigns of the decedent, as completely as if he were the absolute legal and equitable owner of said property and shall be accepted without question and without any other proof than his own statement. To give effect to such acts and statements this agreement shall operate, upon the death of either party, as a sale and delivery to the survivor of all the partnership property not then withdrawn from the partnership use."

Another large item of Mr. Hubbard's estate consisted of securities owned by him individually but which had been pledged to secure loans made by others to a railroad corporation in which he was largely interested and which loans were also secured by collateral belonging to the debtor. These loans did not become due for some time after the decedent's death and at the time of his death it was uncertain whether the debtor would discharge its obligations or whether the creditors would be compelled to resort to the individual securities of decedent.

Under these circumstances the Appellate Division has held that the appraisal for the purpose of fixing the transfer tax upon these two portions of the estate should be postponed, in the case of the interest in the copartnership property until the liquidation should be completed by the surviving partner as provided in the copartnership agreement, and in the case of the securities pledged for the loans of the third party until the loans should become due and it should be ascertained whether in fact resort would be had to the individual securities of the decedent for the purpose of paying them.

The transfer tax is imposed upon the estate of the decedent as it exists at the hour of his death and its value is to be fixed as of that time. We are not aware, however, of any requirement that the actual appraisal must be made immediately after the death so long as it is

made as of that time. We think that the question whether in a given case it shall be made at once or shall be postponed to await the happening of some event which may render the appraisal more easy and certain involves within limits a question of discretion to be settled by the court upon the facts in that case. It might happen that the estate of the decedent would consist of such properties that no advantage could possibly be gained by postponing the appraisal. On the other hand, it might be that the value of an estate would be so contingent and uncertain at the time of death that a valuation of it immediately would be mere guesswork and action should be postponed. This has been held in various cases. (*Matter of Westurn*, 152 N. Y. 93; *Matter of Zefita*, 167 id. 280; *Matter of Hazard*, 228 id. 26.)

The present case in our opinion involves such questions of discretion. We think that under the copartnership agreement the value of the decedent's estate in the copartnership will be fixed by the liquidation which the surviving partner is entitled to make subject of course to the exercise of good faith by him and subject to certain other qualifications to be mentioned. The decedent has absolutely provided that his interest in the copartnership shall be liquidated in this manner and that the amount thus realized shall be controlling upon his representatives. There was nothing improper about the method thus adopted and there is no reason why the state and the estate should not be bound by it as a basis of valuation for purposes of taxation.

We must not, however, lose sight of the fact that the valuation for purposes of taxation is to be made as of the date of death and, therefore, the amounts realized by the partner on liquidation may require some modification to adjust them to that date. Some modifications which might thus be necessary readily occur to the mind. The appraisal for purposes of the transfer tax should not be affected by increase or decrease in the value of property

between the date of death and the date when the property was liquidated by the partner or by items of interest or income, and possibly items of some other character arising within that period. (*Matter of Hazard, supra.*) Such items, if any, must be considered and the sums realized by the partner's liquidation be so modified by their consideration as to make the valuation finally adopted applicable to the date of decedent's death and resulting transfer.

And so in the case of the securities pledged for the debt of a third party. The events occurring on the maturity of this indebtedness quite possibly may make it clear whether the debtor will be able to pay or provide for its indebtedness and thus turn what at the time of decedent's death was a mere speculation into a certainty. A court might very well think it wise under such circumstances to delay appraisal for a reasonable period.

What we have said makes it clear that most of the questions submitted to us are not in a form which permits of a categorical answer either in the affirmative or negative which is the only form we are permitted to adopt. They deal with the fundamental question as one of law. We think that in this case at least it is one of judgment and discretion. Therefore, while we have thought it advisable to give our views in respect of the questions actually involved, the formal disposition of the appeal will be a dismissal.

The appeal should be dismissed, with costs payable out of the estate.

HOGAN, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur; McLAUGHLIN, J., absent.

Appeal dismissed.