(Nos. 4924, 5314. December 7, 1929.)

In the Matter of the Estate of SAMUEL MARX ROTH-
CHILD, and In the Matter of the Estate of ANNE
FALK ROTHCHILD.

[283 Pac. 598.]

486

Chas. M. Kahn, for Appellant.

W. D. Gillis, Attorney General, and Alfred C. Cordon, Assistant Attorney General, for Respondent.

GIVENS, J.—There are herein two appeals but the same question is involved and this opinion disposes of both.

Joseph M. Rothchild, father of Samuel Marx Rothchild, died in California, September 26, 1920, leaving by will to Samuel Marx Rothchild, a specific legacy of $25,000 and one-third interest in all the residue of his estate except $56,000 given as specific legacies to other relatives, including the $25,000 specific legacy above mentioned. Joseph M. Rothchild's estate was probated in California and was not closed until July 25, 1925.

Prior to the death of Samuel Marx Rothchild on January 14, 1922, he had received only $1500 of his father's estate. By will Samuel Marx Rothchild gave all his estate to his wife, Anne Falk, providing in the event of her death prior to his, that his estate should go to their two children, Josephine Nancy, and John Falk Rothchild. Anne Falk

Rothchild left a will giving her estate in trust in equal shares to the two children.

Prior to her death on January 23, 1924, Anne Falk Rothchild received from her husband's estate only a family allowance under order of the probate court in Ada county, Idaho, such estate at her death not having been distributed.

There has been no probate of the estate of Anne Falk Rothchild but upon her death application was made in the probate proceedings of the estate of Samuel Marx Rothchild in Ada county, to have his estate distributed directly to Josephine Nancy and John Falk Rothchild, concededly the only heirs now living of Samuel Marx and Anne Falk Rothchild.

The controversy herein arises over the claims of the state that a transfer or inheritance tax should be paid on the transfer from the estate of Samuel Marx Rothchild and one on the transfer from the estate of Anne Falk Rothchild. The state does not object to the direct transfer from the estate of Samuel Marx Rothchild to the two children without probate of the estate of Anne Falk Rothchild if the two taxes are paid. The administrator objects to the tax on the ground that the property involved was never in the state and that neither Samuel Marx nor Anne Falk Rothchild were seised or possessed of the inheritance during their lifetime because it had not been distributed first from Joseph M. Rothchild to Samuel Marx Rothchild, and second from Samuel Marx Rothchild to Anne Falk Rothchild. The property involved was, as to all that outside the state of Idaho, stocks and bonds; hence intangible personal property. (*Blodgett v. Silberman,* 277 U. S. 1, 48 Sup. Ct. 410, 72 L. ed. 749.) Since both Samuel Marx and Anne Falk Rothchild were residents of the state of Idaho, it was subject to the jurisdiction of the courts of this state.

The balance of the property was cash in the possession of the administrator in this state.

C. S., sec. 3371, so far as material herein, was, prior to its recent amendment, as follows:

"All property which shall pass, by will or by the intestate laws of this state, from any person who may die seized or possessed of the same while a resident of this state, or if such decedent was not a resident of this state at the time of death, which property, or any part thereof, shall be within this state, or any interest therein, or income therefrom which shall be transferred by deed, grant, sale or gift, made in contemplation of the death of the grantor, vendor or bargainor, or intended to take effect in possession or enjoyment after such death, to any person or persons, or to any body politic or corporate, in trust or otherwise, or by reason whereof any person or body politic or corporate shall become beneficially entitled, in possession or expectancy, to any property, or to the income thereof, shall be and is subject to a tax hereinafter provided for, to be paid to the treasurer of the proper county, as hereinafter directed for the benefit of the general fund of this state, to be used for all the purposes for which said fund is available.":

C. S., sec. 3376, is as follows:

"When any grant, gift, legacy or succession upon which a tax is imposed by section 3371 shall be an estate, income or interest for a term of years, for life, or determinable upon any future or contingent event, or shall be a remainder, reversion or other expectancy, real or personal, the entire property or fund by which such estate, income or interest is supported, or of which it is a part, shall be appraised immediately after the death of the decedent, and the market value thereof determined, in the manner provided in section 3384, the tax prescribed by this chapter shall be immediately due and payable to the treasurer of the proper county, and, together with the interest thereon, shall be and remain a lien on said property until the same is paid; provided, that the person or persons, or body politic or corporate, beneficially interested in the property chargeable with said tax, may elect not to pay the same until they shall come into the actual possession or enjoyment of such property, and in that case such person or persons, or body politic or corporate, shall execute a bond to the people of the state of Idaho in a

penalty of twice the amount of the tax arising upon personal estate, with such sureties as the said probate court may approve, conditioned for the payment of said tax, and interest thereon, at such time or period as they or their representatives may come into the actual possession or enjoyment of such property, which bond shall be filed in the office of the county recorder of the proper county; provided further, that such person shall make a full and verified return of such property to said court, and file the same in the office of the county recorder within one year from the death. of the decedent and within that period enter into such security, and renew the same every five years.''

The tax is due immediately on the death of the person rendering such property subject to such taxation. (C. S., sec. 3378.) Hence, if payable from the estate of Samuel Marx Rothchild it was due January 14, 1922, and if from the estate of Anne Falk Rothchild, January 23, 1924.

The nature and character of the transfer tax imposed by sec. 3371 and immediately succeeding sections has been thus declared by this court in the case of *State v. Dunlap,* 28 Ida. 784, Ann. Cas. 1918A, 546, 156 Pac. 1141, 1144:

''In a note to the opinion in case of *Sherman v. State* (*In re McKennan's Estate*), 25 S. D. 369, 126 N. W. 611, decided by the Supreme Court of South Dakota and reported in 33 L. R. A. (N. S.) 606, a great number of authorities are cited in support of the doctrine that an inheritance tax is a tax upon the right to transfer property by the testator or intestate and to receive it by the heir, devisee or legatee and not upon the property itself. Therein it is said: 'The authorities are unanimous upon the proposition that an inheritance tax is neither a property nor a personal tax and in all the cases herein cited it is so declared; and though, as will hereafter appear, there is some little conflict as to what the tax is really levied upon, the overwhelming weight of authority supports the rule that such tax is a bonus in the nature of an excise or duty exacted by the state for the privilege granted by its laws of inheriting or succeeding to property on the death of the owner.'

"While the *situs* of property is a controlling factor when the right to levy and collect a property tax is under consideration, it must be remembered that an inheritance or succession tax is not a tax upon property, but is a 'bonus in the nature of an excise or duty exacted by the state for the privilege granted by its laws of inheriting or succeeding to property on the death of the owner,' and that in considering whether or not such a bonus is due, the location of the property is material only when it invests the state with jurisdiction to control the right to make the transfer by inheritance or succession."

Thus the value of the property is the yardstick which determines the amount of the tax, but the property itself is not that which is taxed. Assuming that appellants' contention that the thing taxed is the transfer to the heir, not the transfer from the decedent, the gist of the case and appellants' chief contention revolve around the words "seized" and "possessed," they arguing that if these words be construed to give the state the right to levy the tax, it would result in double taxation and confiscation of property in violation of the due process clause of the federal Constitution.

The various provisions of the statute must be construed together. (*In re Meyer*, 209 N. Y. 386, Ann. Cas. 1915A, 263, 103 N. E. 713, L. R. A. 1916C, 615.)

Bearing in mind that the tax is on the transfer and not on the property, it is clear that there were two transfers—one from the Samuel Marx Rothchild estate and one from the Anne Falk Rothchild estate. The tax in California under the state law and the one under the federal act on the Joseph M. Rothchild estate have no bearing on the question here. They were on a separate and distinct transfer and we have no inhibitory five-year law like California. Our statutes when read and construed together indicate that future vested though not then realized interests, contingencies and remainders are considered as property which give rise to the right to levy the tax. (C. S., sec. 3376.)

Appellants concede that Samuel Marx Rothchild during his lifetime but after the death of Joseph M. Rothchild had

an interest in the Joseph M. Rothchild estate but that it was inchoate and not personal; also, as to Anne Falk Rothchild's interest in the estate of Samuel Marx Rothchild, but they contend that this right or interest was not property.

The respective interests of Samuel Marx Rothchild and Anne Falk Rothchild were not contingent in the true sense of that word. Nothing remained for such interests to pass, as the record shows, but the settling of the estates and payment of the legacies and balance after the payments of debts. Whether the value of each party's share was the full amount thereof is not raised herein nor is it material. The question is, Did Samuel Marx Rothchild and Anne Falk Rothchild at their respective deaths have property of value in the state of Idaho which passed to their heirs? If they did not have the interest in the respective estates at the time of each decedent's death, when did it come to them?

The will of Anne Falk Rothchild gave the property involved in trust for her two children until they attained the age of twenty-five years. If either died prior to attaining such age, leaving issue, his or her share to such issue; if no issue, then his or her share to the survivor. Under C. S., sec. 3376, this trust property clearly constituted the basis of a taxable transfer. The administrators held the property for the purposes of administration, but Samuel Marx Rothchild and Anne Falk Rothchild possessed their respective beneficial interests therein.

To reach the present heirs the property had to pass through the possession and ownership of each ancestor because Anne Falk Rothchild died after Samuel Marx Rothchild; hence his will by its terms could not operate to vest his estate in his children.

C. S., sec. 7838, is as follows:

"In specific devise or legacy, the title passes by the will, but possession can only be obtained from the personal representative; and he may be authorized by the judge of the probate court to sell the property devised and bequeathed in the cases herein provided."

This statute gives the property to the heirs subject only to administration. The administrators or executors are only trustees. They do not own the property.

Appellants rely on the following authorities as sustaining their main position which we will consider *seriatim:*

In *In re Rohan-Chabot's Estate*, 167 N. Y. 280, 60 N. E. 598, 599, Henry Heyward died leaving by will one-third of his estate to his wife, the balance to his son and daughter, referred to as the Countess. The son died before his mother and sister, leaving his share to his mother for her life, then to his sister. The mother exercised her power of appointment in favor of the daughter. The mother's will was offered for probate the same day the daughter died. The court held that a tax was payable on the transfer from the mother when the amount of property so inherited should be ascertained and likewise on the property passing from the daughter's estate to her heir, Miss McLean. The mother had received the full inheritance to which she was entitled from her husband. The daughter, of course, had not because she died the day probate was started of her mother's estate.

Appellant urges that this supports the tax only on one transfer. But the principle established by the case is this: The daughter died while only entitled to receive from the mother. Nevertheless, on the transfer from the daughter to her heir, the tax was due, the court saying:

"When the executor of Mrs. Heyward, the mother, shall have accounted and ascertained the amount of the residuary estate in his hands, it will be his duty to see that the transfer tax is adjusted and satisfied before paying over the residue to the legal representative of the countess. It is obvious that at the time of the appraisal neither the executor under the will of the countess, nor Miss McLean as her residuary legatee, was liable to pay a tax on the amount of an unascertained claim against the estate of Mrs. Heyward. As to the two estates in remainder under the wills, respectively, of the father and brother of the countess, the

latter was vested with the title to the residue on the death of each testator, but possession and enjoyment were postponed until the falling in of the life estate; and when that event occurred the entire estate, legal and equitable, vested instantly in the remainderman. The executor of the countess, under the circumstances, was liable to pay the transfer tax before he could distribute the personal property in his hands, or to the possession of which he was immediately entitled. The order appealed from should be affirmed, but without costs, as neither appeal is sustained.''

In *In re Thomas' Estate*, 3 Misc. Rep. 388, 24 N. Y. Supp. 713, the court held that the personal estate of the deceased consisted exclusively of her distributive share in the estate of a deceased sister, that no part of said estate had come into the possession of the testatrix prior to her death and was not taxable, citing *In re Swift*, 64 Hun, 639, 19 N. Y. Supp. 292. The case cited approved in *In re Swift's Estate*, 2 Conn. 644, 16 N. Y. Supp. 193, without opinion. This latter case held that personal property outside the state of decedent's residence was not taxable in the state where decedent lived. If this be contended to include intangible personal property, it is contrary to *Blodgett v. Silberman, supra,* and from the decisions from New York cited in the briefs in the last-mentioned case, evidently contrary to the now accepted doctrine in New York. (See, also, *Rhode Island Hospital Trust Co. v. Doughton,* 270 U. S. 69, 43 A. L. R. 1374, 46 Sup. Ct. 256, 70 L. ed. 475.)

In *In re Lord's Estate,* 111 App. Div. 152, 97 N. Y. Supp. 553, 557, Edward C. Lord, resident of New Jersey, died leaving his estate to his wife, also a resident of New Jersey. Among other items of property, there were securities in a safe deposit box in New York. Before Mrs. Lord received these, she died. New York sought to tax their transfer from Mrs. Lord's estate as property belonging to her within the state of New York. The court there said, quoting from the case of *In re Matter of Houdayer,* 150 N. Y. 37, 55 Am. St. 642, 44 N. E. 718, 34 L. R. A. 235:

"A reasonable test in all cases, as it seems to me, is this: Where the right, whatever it may be, has a money value and can be owned and transferred but cannot be enforced or converted into money against the will of the person owning the right without coming into this state, it is properly within this state for the purposes of a succession tax."

Applying the doctrine above announced to the facts herein, we have this result, Samuel M. Rothchild was a resident of this state. His estate was probated herein. Hence his interest in his father's estate was property within this state and so of the estate of Anne Falk Rothchild.

That the above case is not authority for the proposition that because the personal property of the estate of Joseph M. Rothchild was in California, Samuel M. Rothchild at his death had no taxable interest therein is apparent from the way it is treated in the notation in 46 L. R. A., N. S., 1167, at 1178, where after citing and discussing this case it is said:

"As to whether a tax is payable at the domicile in respect of decedent's interest in the estate of one who was domiciled in another jurisdiction, or had personal property in such jurisdiction, see Infra II."

At page 1179 the general rule is thus stated:

" . . . . A succession or inheritance tax imposed by the state or county of the decedent's domicile is payable in respect of personal property, at least intangible property, not otherwise exempt, although the evidences thereof are physically absent from the jurisdiction." (See, also, *Blodgett v. Silberman, supra.*)

The note to the case of *Frick v. Pennsylvania,* 268 U. S. 473, 45 Sup. Ct. 603, 69 L. ed. 1058, 42 A. L. R. 316, note, 327, indicates the number of states which prior to the decision in *Blodgett v. Silberman, supra,* had held that intangible personal property, wherever situated, was taxable at the domicile of the decedent.

In *In re Phelps' Estate,* 181 App. Div. 82, 168 N. Y. Supp. 536, 540, the facts were as follows:

S. P. died in December, 1902. His father W. W. P., died in 1894, both residents of New Jersey. W. W. P. possessed shares of stock in the National City Bank. S. P. was W. W. P.'s residuary legatee. The trustees and executors of W. W. P.'s estate by mutual agreement re-invested the proceeds derived from the sale of this stock and held at the time of S. P.'s death 2,625 shares. The bank refused to transfer them on the books unless the state comptroller waived the tax. He refused. The court held S. P.'s right at his death a "mere chose in action in favor of one non-resident against another and would not be taxable in this state." (It is to be remembered that here we are not concerned with the tax on the transfer from Joseph M. Rothchild to Samuel M. Rothchild but only on the transfer from Samuel M. Rothchild to Anne Falk Rothchild and from Anne Falk Rothchild to Josephine Nancy and John Falk Rothchild.) The court said:

"All that these latter executors succeeded to was what Sheffield Phelps had at his death, which was an equitable, undivided interest in his father's estate, and the right to call upon the executors to make distribution to him."

" . . . . The real and only question is whether Sheffield Phelps owned these particular shares of stock when he died, being a nonresident. We think it is clear that he did not."

The last paragraph quoted is more nearly the situation herein and shows clearly that the cited case does not support the principle contended for by appellant, namely, that the interest which Samuel M. Rothchild had in his father's estate at his death was not property in this state and as such taxable herein the same as the interest held by Anne Falk Rothchild in her husband's estate.

Examining *In re Clinch's Estate*, 180 N. Y. 300, 73 N. E. 35, cited and distinguished in the above, we find the facts there as follows: At the time of the death of R. T. C. the estate of his father, C. J. C. had not been distributed. Later it was and the controversy was as to the tax on the transfer under R. T. C.'s will to his legatees. The court

held the interest of R. T. C. in his father's estate subject to the inheritance tax imposed by the laws of New York.

Counsel for appellants argue that this was only one transfer while here we have two. If the principle, however, be sound, that an interest in an undistributed estate is the basis for a transfer tax, it matters not how many transfers there be. Each one is a distinct taxable transaction, the only uncertain question being the value of such interest, an entirely different and distinct question to be determined when the amount of the interest should be ascertained. (See, also, *In re Hazard's Estate,* 188 App. Div. 869, 177 N. Y. Supp. 369; *In re Hubbard's Estate,* 234 N. Y. 175, 137 N. E. 17.)

One principle underlying the decision in *In re Clinch's Estate, supra,* is to the effect that the validity of a bequest or devise and their enforcement rest upon the law and courts of the place where the decedent resides and such an interest may therefore be subject to a tax. (See, also, *In re Gordon's Estate,* 114 App. Div. 202, 99 N. Y. Supp. 630.) In the case at bar, the right of the claimant, Anne Falk Rothchild, against the estate of Samuel Marx Rothchild, received its validity from and depended for its enforcement on the laws of Idaho. The same is true of the claims of Josephine Nancy and John Falk Rothchild against the estate of their mother, Anne Falk Rothchild. As neither claim could have been enforced without the sanction of the law of this state, we believe the state may rightfully exact a tax on each transfer.

*In re Clinch's Estate, supra,* has been clearly held to lay down the doctrine contended for by respondents in *In re Hazard's Estate,* 228 N. Y. 26, 126 N. E. 345, 347, as follows:

"*Matter of Clinch,* 99 App. Div. 298, 90 N. Y. Supp. 923, affirmed 180 N. Y. 300, 73 N. E. 35, upon which much reliance is placed by the respondent, merely determines that an interest in another estate, not distributed at the time of death, is taxable when paid. It fixes the time for

ascertaining the amount of transfer tax, but does not determine what that amount shall be. The question here presented was not raised in that case.'' (See, also, *In re Bijur's Estate,* 127 Misc. Rep. 206, 216 N. Y. Supp. 523.)

The apparent contrary holdings of other New York cases are explained by the difference in the statute by later amendments as noted in *In re Scully's Estate,* 118 Misc. Rep. 594, 194 N. Y. Supp. 351.

*In re Watson's Estate,* 120 Misc. Rep. 223, 198 N. Y. Supp. 893, cited by appellant, concerned the interest of a nonresident while here we are concerned with residents. Furthermore the doctrine of this case would appear to be at variance with what California did in levying a tax on the transfer from Joseph M. Rothchild to S. M. Rothchild, the record showing that such was done.

In *Miller v. Edwards,* 85 N. J. L. 517, 89 Atl. 987, and in *Penfold v. Edwards,* 87 N. J. L. 461, 95 Atl. 128, the court held that personal property in New Jersey, the subject of transfer from mother to daughter and from daughter to her legatees where the daughter died before receiving the actual proceeds of her mother's estate was not taxable in New Jersey. Respondent argues that this decision was because the *situs* of the property was held to be where the deceased was domiciled, that is, New York. The case does not seem to so hold but without considering what the daughter possessed at the time of her demise, holds rather in favor of appellant's position.

In the above two cases no effect was apparently given to the definition of the word ''property'' in sec. 26 of the New Jersey act. C. S., sec. 3387, is similar and so far as material here is as follows:

''The words 'estate' and 'property' as used in this chapter shall be taken to mean the real and personal property or interest therein of the testator, intestate, grantor, bargainor, vendor or donor passing or transferred to individual legatees, devisees, heirs, next of kin, grantees, donees, vendees

or successors, and shall include all personal property within or without the state. . . . . ''

Thus the word "property" in C. S., sec. 3371, includes any "interest" in property. The word "seized" is usually considered as applicable to real property. (35 Cyc. 1371; Bouvier, p. 3036; 7 Words and Phrases, 6395; 4 Words and Phrases, 2d ed., 504; 6 Words and Phrases, 3d ed., 1006.)

"Possession" is used in connection with both. (31 Cyc. 924; Bouvier, p. 2635; 6 Words and Phrases, 5463; 3 Words and Phrases, 2d ed., 1096; 5 Words and Phrases, 3d ed., 1118.)

Were not the heirs possessed of an interest in the personal property in each estate immediately upon the death of the testator? Such would seem to be the holding in *In re Clark's Estate,* 100 Vt. 217, 136 Atl. 389, 393, relied on by appellant, as follows:

"It is true, as urged by the executors, that the title of the legatees and distributees to their respective properties vested in them immediately upon the death of the testator; that is, vested in point of right, subject to the rights of the executors for certain purposes."

This case as well as *In re Morse's Estate,* 100 Vt. 227, 136 Atl. 394, discusses the right to tax income earned by the estate after the testator's death with which question we are not here concerned.

The interest which Samuel M. Rothchild had in his father's estate and which Anne Falk Rothchild had in her husband's estate was not a contingent interest but was more certain, definite and secure than is a contingent estate, yet contingent estates are taxable. (*People v. Byrd,* 253 Ill. 223, 97 N. E. 293.)

*In re Phipps,* 77 Hun, 325, 28 N. Y. Supp. 330, was decided on the ground that deceased, a nonresident of New York, had no taxable property in New York, the same being an undistributed interest in an estate in process of settlement in New York. To make the situation similar we would have

California endeavoring to tax the interest passing from Samuel M. Rothchild to Anne Falk Rothchild.

The real question in the case was the *situs* of the property, not whether it was property, and the decision is in line with *Blodgett v. Silberman, supra,* and *Smith v. Blodgett,* 187 Cal. 235, 201 Pac. 584. The *situs* of intangible personal property is the domicile of the owner and if a transfer tax is to be levied in connection therewith, the same is to be levied in the state where the owner resides. As said in *In re Horn's Estate,* 39 Misc. Rep. 133, 78 N. Y. Supp. 979:

"A mere chose in action, a right to recover a sum of money, has never, as yet, been given the attribute of tangibility, and for the purposes of the statute taxing transfers, it has always been treated as having no *situs* other than the domicile of the creditor." (*In re Abbett's Estate,* 29 Misc. Rep. 567, 61 N. Y. Supp. 1067.)

In the case considered the owner of the interest lived in Boston, hence his estate was not taxable in New York. (See, also, *In re Phelps' Estate,* 100 Misc. Rep. 87, 165 N. Y. Supp. 75; *In re Hanson's Estate,* 119 Misc. Rep. 100, 195 N. Y. Supp. 255; *In re Harkness' Estate,* 83 Okl. 107, 42 A. L. R. 399, 204 Pac. 911.)

This distinction has been clearly recognized in *In re Houdayer's Estate,* 3 App. Div. 474, 38 N. Y. Supp. 323; citing *Phipps' Case,* 77 Hun, 325, 28 N. Y. Supp. 330, and in *In re Ames' Estate,* (Sur.) 141 N. Y. Supp. 793.

The case of *In re Chabot,* 44 App. Div. 340, 60 N. Y. Supp. 927, might appear from the reference in the majority opinion, and the dissent, to *Phipps' Case, supra,* to hold that the interest was not taxable property at all but a reference to the opinion in *In re Rohan-Chabot's Estate, supra,* shows, as outlined above in the discussion herein of that case, that such was not the situation. The final holding was that when the interest was determined, the taxes should be paid.

The New York court in *In re Hawley's Will,* 44 Misc. Rep. 186, 89 N. Y. Supp. 803, considering both *In re*

*Phipps, supra, In re Chabot, supra,* and *In re Rohan-Chabot's Estate, supra,* has so held.

The court in *In re Huber's Estate,* 86 App. Div. 458, 83 N. Y. Supp. 769, 773, discussing *Phipps' Case, supra,* and *In re Chabot, supra,* said:

"The question presented was whether the interest transferred by Phipps to his wife in the state of Massachusetts was taxable in the state of New York under the provisions of chapter 483, p. 620, of the Laws of 1885, as amended by chapter 713, p. 921, of the Laws of 1887, as amended by chapter 215, p. 409, of the Laws of 1891, and the court held that it was not, the decision going upon the principle that the mere chose in action transferred in another state, although relating to property which was within this state, because it had not been determined and transferred under the original will, was not property transferred by will within the meaning of the statute. The same principle was involved in *Matter of Chabot's Estate,* 44 App. Div. 340, 344, 60 N. Y. Supp. 927, and the conclusions reached were subsequently affirmed by the Court of Appeals in *Matter of Zefita, Countess de Rohan-Chabot's Estate, supra.*"

*In re Clinch,* 99 App. Div. 298, 90 N. Y. Supp. 923, 926, considering the application of *In re Phipps, supra,* and *In re Chabot, supra,* and *In re Rohan-Chabot's Estate, supra,* to a situation quite like the one we have in the case at bar, said:

"Of course, until there had been a settlement of the father's estate, it could not be definitely known there would be any transfer to tax; and, until a distribution had been made, nothing had been transferred, and for that reason no tax could be imposed. Up to that time there was a mere claim on the part of Robert or his executors against his father's executors for a share or interest in his estate, which passed by his will. Such a claim was at most a mere chose in action which followed the residence of the claimant; and, as indicated, it would be impossible to determine as to what property, if any, would be ultimately transferred by reason

of it. But when an actual distribution had taken place, that which theretofore was uncertain became certain and that moment a tax attached to the transfer. *Matter of Huber's Estate,* 86 App. Div. 458, 83 N. Y. Supp. 769.''

*In re Hazard's Estate,* 188 App. Div. 869, 177 N. Y. Supp. 369, supports the last quotation.

Thus we see that *In re Phipps, In re Chabot* and the cases following them pass on the question of the *situs* and not whether the interest involved, and passing, was as such, property subject to the transfer tax. (See *Gilbertson v. Oliver,* 129 Iowa, 568, 105 N. W. 1002, 4 L. R. A., N. S., 953.)

*Vanderbilt v. Eidman,* 196 U. S. 480, 25 Sup. Ct. 331, 49 L. ed. 563, is not in point because the federal statute therein construed and followed did not contain a provision similar to C. S., sec. 3376, and the court expressly noticed the absence of such provision as is contained in C. S., sec. 3376.

Appellant argues that the *situs* of the property was in California and was not taxable here under the following decisions:

*Cleveland etc. Co. v. Pennsylvania,* 15 Wall. (U. S.) 300, 21 L. ed. 179. This case held that bonds of a railroad in Pennsylvania held by a nonresident of Pennsylvania were not taxable in Pennsylvania. No question of an inheritance tax was in the case. It must be kept in mind that in Idaho, the transfer tax is on the transfer from the decedent to the heir, legatee, etc., not on the property. Also the Idaho law includes both property within and without the state. (C. S., sec. 3387.)

*Frick v. Pennsylvania,* 268 U. S. 473, 42 A. L. R. 316, 45 Sup. Ct. 603, 69 L. ed. 1058. This case holds that tangible personal property is taxable in the state of its *situs* and *Blodgett v. Silberman, supra,* holds that intangible personal property is taxable where its owner is domiciled. Appellants admit that Samuel Marx Rothchild and Anne Falk Rothchild and their children each had an interest in the respective estates. If intangible, it is taxable in Idaho under

the above decisions and if tangible, clearly, under C. S., sec. 3387, taxable in Idaho.

*In re Hays' Estate,* 288 Pa. St. 348, 135 Atl. 626, involved real estate only.

*In re Clark's Estate,* 100 Vt. 217, 136 Atl. 389, and *In re Morse's Estate,* 100 Vt. 227, 136 Atl. 394, merely follow the Frick case and as we have indicated above the property herein being intangible, the situation here is governed by *Blodgett v. Silberman, supra.*

The tax here is not so large as even to suggest spoliation nor does *Frick v. Pennsylvania, supra,* so indicate.

Appellants complain that a tax was levied by California and the federal government on the transfer from Joseph M. Rothchild to Samuel M. Rothchild and that if respondent prevails two more taxes will be levied. The fact that a tax was levied in California on the transfer from J. M. Rothchild to S. M. Rothchild has no bearing on the right of this state to levy a tax on entirely different transfers. (*Blackstone v. Miller,* 188 U. S. 189, 23 Sup. Ct. 277, 47 L. ed. 439.)

The two levies here are separate and distinct transfers or entities, namely, one from Samuel M. Rothchild to Anne Falk Rothchild and one from Anne Falk Rothchild to the two children.

Appellants cite *In re Sabin's Estate,* 131 Misc. Rep. 451, 227 N. Y. Supp. 120, as authority for the proposition that the tax law should be most strictly construed against the state and the tax not imposed herein. Suffice it to say that that case was reversed and the cause remanded with instructions to impose the tax there considered. (*In re Sabin,* 224 App. Div. 702, 228 N. Y. Supp. 890.)

In *Bingham's Admr. v. Commonwealth,* 196 Ky. 318, 244 S. W. 781, an estate was left in trust for a period of years at the termination of which the property was all to go to the *cestui que trust.* Before the time arrived the *cestui que trust* died and the question was whether she was so possessed of the trust property as to make its transfer under her will subject to an inheritance tax under a statute similar

to ours. The court after exhaustively considering the meaning to be attached to the words "seized" and "possessed" held that the *cestui que trust* was so possessed, and the transfer from her estate subject to the tax. There the complete enjoyment was deferred because of the trust yet it was held that the *cestui que trust* was possessed of the property.

*In re Dillingham's Estate*, 196 Cal. 525, 238 Pac. 367, 369, holds that a *cestui que trust* was possessed of an interest in the trust property subject to a transfer tax.

This case is in point on the meaning of the phrase "Possession of an interest" and what the court there said as to the extent of such ownership is applicable to the property right of the decedents which they possessed at the time of their respective deaths:

" 'Possessed' is a variable term, and has different meanings as it is used in different circumstances. It may, for example, imply no more than a corporal having. On the other hand, it is commonly employed to indicate ownership of any kind of property. Having in mind the nature and purpose of the statute under discussion, the word 'possessed' could not have been used in the sense of mere 'corporal having' for obviously no tax could have been intended to be levied on a mere transfer of actual physical possession. Webster's New International Dictionary gives the definition of the verb 'possess' as 'to have and to hold as property; to have a just right; to be master of; to own. . . . . ' It was in this sense, we think, that the word 'possessed' was used in the instant case, with the intent to indicate a character of ownership falling short of seizin. Used in that sense there can be no escape from the conclusion, it seems to us, that Caroline Frances Dillingham, at the time of her death, was possessed of an interest in the property transferred by her will. She owned exclusively every beneficial interest therein, immediate and prospective. She had control over the whole beneficial interest. She had the absolute right of ownership, both legal and beneficial, if she chose to revoke the trust. In short, she had not only an interest in the income from the property, but she, as creator of the

trust with a reservation of the right of revocation, had a beneficial interest in the *corpus* of the trust itself.''

Furthermore, the above case states, as the fundamental reason, supporting the imposition of an inheritance or transfer tax, resort to the sovereignty of the state for a transfer of an interest. So herein Samuel M. Rothchild and Anne Falk Rothchild each left a will. They were residents of Idaho. Hence resort had to be made to the courts of this state to settle their estates. (C. S., sec. 7438.)

*In re Milliken's Estate*, 206 Pa. St. 149, 55 Atl. 853, on all-fours as to the situation of the Samuel M. Rothchild estate, discusses the question of possession of an interest identical with that held by Samuel M. Rothchild at the time of his death and concluded an interest was possessed, the transfer of which was taxable. If the transfer from Samuel M. Rothchild to Anne Falk Rothchild was taxable, then Anne Falk Rothchild had an interest upon the transfer of which a tax would likewise be due.

There is an additional reason why this interest passing from the estate of Samuel M. Rothchild to the estate of Anne Falk Rothchild and from her to the children was, as to such transfers, taxable. It was the sole and separate property of Samuel M. Rothchild. (C. S., sec. 4659.) He therefore had disposition of it by will. (C. S., sec. 7808; *In re Zimmer's Estate*, 47 Ida. 364, 276 Pac. 302; 40 Cyc. 1043; 26 Cal. Jur., p. 914.)

Hence if Samuel M. Rothchild could have disposed of this interest in his father's estate by will it was property and the transfer of it was taxable. The last-mentioned case considered whether a testator was possessed of property which actually came to his estate after his death and held he was seised of the property or interest coming from his sister's estate at his death, though not then distributed so it passed under his will. Upon the death of Samuel M. Rothchild the interest passing to Anne Falk Rothchild became likewise her separate estate and the same reasoning applies.

*Safe Deposit & Trust Co. v. Commonwealth*, 50 Sup. Ct. 59, 74 L. ed. 76, is urged as in effect overruling *Blodgett v.*

*Silberman, supra,* and hence sustaining appellants' contention that because the property, the basis of the transfer from Joseph M. Rothchild to Samuel Marx Rothchild, was in California, the transfers from Samuel Marx Rothchild and Anne Falk Rothchild could not be taxed in this state. *Safe Deposit & Trust Co.* v. *Commonwealth, supra,* considered not a transfer or inheritance tax, but a tax on the *corpus* of the property. Thus the case has no proper application herein.

From a consideration of the above authorities and our statutes, we conclude that Samuel M. Rothchild at his death possessed, in the interest in his father's estate, intangible property, and the transfer thereof from his estate to his widow, Anne Falk Rothchild, was taxable under secs. 3371, 3378, 3387; likewise as to the interest possessed by Anne Falk Rothchild and passing to her children.

The judgment is affirmed. Costs awarded to respondent.

T. Bailey Lee, Wm. E. Lee and Varian, JJ., concur.

Budge, C. J., dissents.

Petition for rehearing denied January 9, 1930.